Motion to dismiss appeal allowed July 18; rehearing denied
September 12, 1933

## STATE *v.* ARCHERD
(24 P. (2d) 5)

*C. F. Pruess,* of Grants Pass, for appellant.
*William H. Trindle,* of Salem, for the State.

BAILEY, J.  Charles R. Archerd, defendant herein, was convicted in the circuit court of Marion county of the crime of larceny by bailee.  After motion for a new trial had been denied, his attorney served on the district attorney a notice of appeal addressed, "To: State of Oregon, Plaintiff, and William H. Trindle, District Attorney, and U. G. Boyer, County Clerk of Marion county, Oregon", and stating that the defendant appealed to the supreme court of the state of Oregon from the judgment entered against him in said circuit court.  Service on the district attorney was effected by handing to him a copy of the notice of appeal and having him acknowledge service on the original

thereof. The original notice was then presented to, and filed by, the deputy county clerk of Marion county. The transcript on appeal, prepared by the county clerk, contained a copy of the notice of appeal with the acceptance of service thereon by the district attorney.

The district attorney now moves to dismiss the appeal on the ground that the notice was not served on the county clerk as provided by law.

The code of criminal procedure was enacted in 1864 and the provisions thereof relating to appeals remain to this date unchanged. Section 13-1209, Oregon Code 1930, concerning appeals in criminal cases, provides as follows: "An appeal must be taken by the service of a notice in writing on the clerk of the court where the judgment roll is filed, stating substantially that the appellant appeals from the judgment". The next section, 13-1210, relates to appeal by the defendant and is as follows: "If the appeal be taken by the defendant, a similar notice must be served on the district attorney for the county in which the judgment roll is filed."

In 1862 the code of civil procedure was adopted. It provides that, "The appellant shall cause the notice to be served on the adverse party and file the original, with proof of service endorsed thereon, with the clerk where the judgment or decree is entered": Code of Civil Procedure 1862, § 527. The two codes differ materially in wording, relative to appeals. It seems unreasonable to suppose that the legislature, after providing in the code of civil procedure that the notice of appeal should be served on the adverse party and the original thereof be filed with the clerk, would seek to accomplish the same result in the code of criminal procedure by the use of language differing

materially from that used in the first instance. The Honorable M. P. Deady, who was a member of the code commission that prepared the code of civil procedure, was also the author of the code of criminal procedure.

In *State v. Ellis,* 3 Or. 497, it is said: "The requisitions of the code in reference to appeals in criminal, materially differ from those in regard to civil causes. * * * Notices are to be served differently."

Since the enactment of the code of civil procedure in 1862, § 527 thereof has been somewhat amended by allowing the party desiring to appeal to give notice thereof in open court. If we were to adopt the rule that filing a notice of appeal in criminal cases with the clerk of the court is tantamount to service thereof upon the county clerk, it is difficult to see in what manner notices in criminal cases were served differently from those in civil cases at the time of the decision in *State v. Ellis,* supra, when the only method of appealing in civil actions was by serving the notice on the adverse party and filing the original with the clerk.

The supreme court of Oregon has held in six reported cases that this court does not acquire jurisdiction of appeals in criminal cases unless notice of appeal in each instance has been served on the county clerk: *State v. Horner,* 36 Or. 68 (59 P. 549); *State v. Blazier,* 36 Or. 97 (60 P. 203); *State v. Berger,* 51 Or. 166 (94 P. 181); *State v. Mageske,* 119 Or. 312 (227 P. 1065); *State v. Berg,* 138 Or. 30 (3 P. (2d) 783, 4 P. (2d) 628); *State v. McAweeney,* 138 Or. 20 (3 P. (2d) 783, 4 P. (2d) 628).

In *State v. Horner,* supra, the notice of appeal was not addressed to the county clerk, but in *State v. Bla-*

*zier,* supra, it was addressed to the state of Oregon, the district attorney and the county clerk. In each and all of the cases above referred to the notice of appeal was filed with the county clerk, who prepared and filed with the clerk of this court the transcript on appeal, containing a certified copy of the notice of appeal.

The criminal code of Indiana, adopted in 1852, required both the defendant and the state in taking an appeal to serve notice thereof on the county clerk: *McLaughlin v. State,* 66 Ind. 193; *Darr v. State,* 82 Ind. 11. This law was amended by the code of 1881 so as to require service of notice on the clerk only in cases where the state appealed: *Darr v. State,* supra.

Prior to February 1, 1879, when it was repealed, a law of South Carolina required the notice of appeal to be served on the clerk: *Kibler v. McIlwain,* 12 S. C. 555; *Crane, Boylston & Co. v. Moses,* 13 S. C. 43.

In *Peck v. Phillips,* 4 Dak. 430 (34 N. W. 65), the court said:

"The judgment was entered on the twenty-seventh day of February, 1886. On the sixth day of March notice of appeal was duly served by copy on the attorney for respondent, and on the same day the original notice was filed (as any other paper in the case would be) in the office of the clerk of the district court. And it is insisted that this was not such a service upon a clerk of the court as is contemplated by section 407 of the Code of Civil Procedure, which is as follows: 'An appeal must be made—(1) By the service of a notice in writing on the adverse party or his attorney, and on the clerk with whom the judgment or order appealed from is entered', etc.; and the question is, was the filing of the notice of appeal in the office of the clerk of the court with the other papers in the case a sufficient service upon the clerk, within the meaning of that statute? We think not. What purpose or

object the law-makers were seeking to accomplish by requiring a copy to be served upon the clerk that would not be attained by filing the original notice with him, we may not stop to discuss. The important consideration is to establish and settle the practice which has been far from uniform in all the courts of the territory.''

In the following additional cases it was held that service of notice of appeal upon the clerk was essential to confer jurisdiction upon the appellate court: *McLean v. State,* 28 Kan. 372; *Valley Land & Irrigation Co. v. Schone,* 2 S. D. 344 (50 N. W. 356); *Territory v. Hanna,* 5 Mont. 246 (5 P. 250); *Port Blakely Mill Co. v. Clymer,* 1 Wash. Territory 607; *Fitzgerald v. Kelson,* 71 Iowa 731 (29 N. W. 943); *State ex rel. Farrell v. Clossner,* 84 Iowa 401 (51 N. W. 16); *Jones v. State,* 8 Pac. (2d) 687. No attempt is here made to cite all the cases from the above mentioned courts to the same effect on the question now before us. In none of the cases which we have found has the court, after deciding that service on the clerk was a prerequisite to confer jurisdiction on the appellate court, overruled its prior holding. Several states, it is true, have through their legislatures amended their laws to provide a different procedure. Such action, however, does not justify this court in usurping the function of the legislature, nor does it furnish any argument for overturning a long line of decisions and a well established rule of procedure.

If the legislature had intended that filing the original notice of appeal with the clerk was a sufficient service on him, it would have been a simple matter for it to follow the wording of the code of civil procedure. The clerk is made the legal custodian of all papers filed with him, those in civil as well as criminal proceedings.

During the 1864 legislative session, when the code of criminal procedure was enacted, there was also passed what was termed the Justices' Act. These when published were bound together in one volume entitled "Code of Criminal Procedure together with the Justices' Act". The footnote at the beginning of the Justices' Act contains this notation: "This act is supplementary to the foregoing codes of civil and criminal procedure, and is intended to regulate the subject in such particulars, as require special provisions in such courts. The act was prepared and reported to the legislative assembly, that met September 12, 1864, by M. P. Deady. It was passed at the same session, with some amendments, and took effect as declared in section 133, for May 1, 1865." A somewhat similar notation precedes the code of criminal procedure, to the effect that the same was prepared and reported by M. P. Deady, was passed as reported, and became effective on the first day of May, 1865.

The chapter of the Justices' Act applying to appeals in criminal actions, section 107 of that enactment, provides as follows: "The appeal is taken in the same manner and within the same time, as in the case of an appeal from a judgment in a civil action, except that the notice thereof must be served upon the district attorney for the county or upon the private prosecutor in the action."

Had Judge Deady in preparing both the criminal code and the Justices' Act, and the legislature in enacting them, intended that appeals in criminal cases from the circuit court to the supreme court be the same as in civil actions, it would have been an easy matter to use substantially the same language in the criminal code as that employed in the Justices' Act. It is

significant also that in the criminal code reference is made frequently to the civil code in outlining the procedure in criminal matters. As a few instances, we cite the following: Section 13-908, Oregon Code 1930, in reference to the taking, filing and reading of depositions; section 13-920, providing that certain chapters of the civil code shall apply to and regulate the conduct of the trial of criminal actions; section 13-928, to the effect that the law of evidence in civil actions shall apply in criminal proceedings, except as otherwise provided in the criminal code; section 13-1116, as to the docketing of judgments in criminal actions, directing that it be the same as in civil actions; section 13-1118, concerning execution in certain proceedings; section 13-1119, providing that the clerk shall complete and endorse the judgment roll in criminal actions in the manner required in the code of civil procedure; section 13-1138,. to the effect that judgment for the payment of money in criminal actions shall be enforced as directed in civil actions; and section 13-1413, as to certain sections in the civil code applicable in ''criminal actions, examinations and proceedings''.

The frequent references in the criminal code to different sections of the civil code, and the adoption of the procedure prescribed in the latter code governing in criminal matters, where applicable, indicate that Judge Deady in drafting the criminal code, and the legislature in enacting it, intended that the procedure outlined in the civil code where applicable should become a part of the criminal code by reference to specific sections or chapters of the civil code, thereby obviating all unnecessary repetition.

When we consider the method thus pursued, and the further fact that the Justices' Act expressly provides

that appeals from justices' courts in criminal actions shall be the same as in civil actions, it is difficult to understand why Judge Deady and the legislature provided in detail the procedure to be followed in appeals in criminal actions from the circuit court to the supreme court, and employed the language there used, and further provided that "the only mode of reviewing a judgment or order, in a criminal action, is prescribed by this chapter": Section 13-1201, Oregon Code 1930, if they intended that such procedure should not differ from that which had already been prescribed by the code relating to appeals in civil actions.

It is needless, however, to pursue this subject further. This court has, by a long line of decisions, uniformly held that the notice of appeal must be served on the county clerk, and that filing the original notice with the clerk does not constitute service on him. There is no good reason why we should now overrule these decisions. No hardship is imposed upon a defendant in a criminal action who desires to appeal, by requiring him to follow the procedure outlined by the statute. If the method of appeal is to be changed, it should be done by the legislature and not by the courts.

The motion to dismiss the appeal should be, and hereby is, allowed.

RAND, C. J., and BEAN and KELLY, JJ., concur.

---

RAND, C. J., specially concurring. If this were a case of first impression, there might be some force in the reasoning of Mr. Justice ROSSMAN that section 13-1209, Oregon Code 1930, is a statute merely defining the procedure of appeals in criminal cases and that its purpose is accomplished by filing the notice of

appeal with the clerk of the court without making any further service upon him. From this he argues that the making of actual service upon the clerk is unnecessary and a vain act. However, the legislature has the power to prescribe the manner in which appeals may be perfected and, in doing so, it has the right to prescribe the doing of acts which to us may seem to be unnecessary. But whether necessary or unnecessary, if the statute is valid, its directions are binding upon the courts. The statute in express terms provides that: "An appeal must be taken by the service of a notice in writing on the clerk of the court where the judgment roll is filed, stating substantially that the appellant appeals from the judgment." It says nothing about the filing of the notice of appeal with the clerk of the court. That requirement is provided by other sections of the code. It does, however, make it essential to the validity of the appeal that the notice shall be served on the clerk and this is equivalent to saying that if the notice of appeal is not so served, the appeal is not perfected.

We have no power to overrule the statute and it is settled law in this state that where the service of the notice of appeal in a criminal case has not been made upon the clerk, the appeal must be dismissed. *State v. Horner,* 36 Or. 68 (59 P. 549); *State v. Blazier,* 36 Or. 97 (60 P. 203); *State v. Berger,* 51 Or. 166 (94 P. 181); *State v. Mageske,* 119 Or. 312 (227 P. 1065); *State v. Berg,* 138 Or. 20 (3 P. (2d) 783).

It is idle now to contend that because some of these decisions were per curiam decisions they did not receive the consideration of the justices who rendered them. They are entitled to the same respect that would be accorded to them if they had not been per curiam

decisions. The fact that they were per curiam decisions is evidence, to my mind, that the court considered the statute so plain and performance of its requirements so necessary that no elaboration to uphold the statute was deemed necessary. Nor does the fact that decisions of other states upon the same or a similar statute then in force were cited by this court as authority in any way detract from the force of our former opinions. That the statutes of other states containing the same requirement as ours have since been repealed by the legislatures of those states does not detract from the force of the opinions rendered before those statutes were repealed in those states. Until now this court has never doubted the wisdom of this statute nor failed to give effect to its terms. To do so now, under the same statute which has never been amended by the legislature, would indicate that the court is bound neither by the statute nor by its former decisions.

For these reasons, I concur in the opinion written by Mr. Justice BAILEY.

ROSSMAN, J., dissenting. The majority bases its conclusion that section 13-1209, Oregon Code 1930, requires one convicted in the circuit court of a crime to hand to the county clerk a copy of the original notice of appeal and obtain from him an acknowledgment of service or prove service in some other manner (except the proof supplied by the presence of the original in the county clerk's files) upon two premises: (1) our codes of criminal and civil procedure are not alike; and (2) the doctrine of stare decisis. No effort whatever is made by the majority to show that the con-

struction which they have placed upon section 13-1209 serves either reason or justice.

Let us see whether the fact that our codes of criminal and civil procedure are different demands the conclusion which the majority has reached. They stress the fact that Judge Deady served upon the commissions which prepared both of these codes, and, after pointing out that there exists a difference between the two, conclude that the legislature which enacted them intended that one who appealed a criminal case should pursue a course different from that of one who appealed a civil case. Such reasoning can bring but scant satisfaction to a court for denying the privilege of an appeal to a citizen convicted of a crime. It is reasonable to conclude that when the legislature enacted section 13-1209 it intended that the appellant should address his notice of appeal to the county clerk, serve it upon the district attorney and then file it with the county clerk. Had section 13-1209 not been enacted there would have been no requirement in our code that the notice of appeal must be filed in the county clerk's office.

The majority depends much upon the doctrine of stare decisis. Their reliance upon that rule indicates strongly that they have found but little reason otherwise for the construction which they have placed upon section 13-1209. In an effort to show that we are bound by the law of precedents, they cite *State v. Horner,* 36 Or. 68 (59 P. 549); *State v. Blazier,* 36 Or. 97 (60 P. 203); *State v. Berger,* 51 Or. 166 (94 P. 181); *State v. Mageske,* 119 Or. 312 (227 P. 1065); *State v. Berg,* 138 Or. 30 (3 P. (2d) 783, 4 P. (2d) 628); *State v. McAweeney,* 138 Or. 20 (3 P. (2d) 783).

Before analyzing the above cases, let us remind ourselves that the majority is not applying the doctrine

of stare decisis to any rule of titles, contracts, commercial paper, rules of trade, matters relating to public institutions or any similar matter where a rule announced in the past has invited people to govern themselves by it. We are concerned with a rule of practice and a change in it will destroy no rights acquired in the past. If we improve upon it, we give better protection for the future. We deem it self-evident that a precedent construing procedure law should have no greater weight than the reason which it employed, and that a mere regard for stability should not interfere with this court's efforts to administer perfect justice. To administer justice is our primary duty; to follow precedents is secondary. A decision which shows that extended consideration has been bestowed upon the cause is, of course, entitled to greater weight than ex parte decisions, those which themselves indicate error, and those which show that the matter was not adequately argued before the court.

The first of the above decisions cited by the majority (*State v. Horner*) was a per curiam decision, and does not indicate that any extended reflection was bestowed upon the matter. An inspection of the files indicates that neither a printed nor a typewritten brief upon the motion to dismiss was filed by either party. It cites as authority for its conclusions *Territory v. Hanna,* 5 Mont. 246 (5 P. 250), and *State v. Gibbs,* 10 Mont. 210 (25 P. 286). In the first of these the Montana court held: "An appeal can only be taken from the district court to the supreme court by the service of a notice upon the clerk of the court where the judgment was entered, stating that the appellant appeals from the judgment. * * * A notice directed to the attorney prosecuting, and served upon him and filed with the clerk, is not the service of notice upon

the clerk. The clerk is not presumed to know the contents of papers filed with him, addressed to other persons, and of which he is simply the custodian. The times at which, and the successive order in which the several steps are to be pursued to take and perfect an appeal, are distinctly prescribed by statute, and must be observed''. In the other Montana case the court held a notice of appeal defective which was addressed to the county clerk because, although it had been served upon the clerk and the prosecuting attorney, it stated that the appellant was appealing from the verdict. Evidencing dissatisfaction with those decisions is the fact that Montana, in the adoption of its 1895 code, repealed the above statute. Although the repeal occurred five years before the decision of *State v. Horner,* it is not mentioned in that case. The second of the cases cited by the majority (*State v. Blazier*) was likewise a per curiam decision. No briefs were filed, no argument was submitted by the prospective appellant, and the court contented itself with citing *State v. Horner,* supra, in support of its conclusion. The third of the cases cited by the majority (*State v. Berger*) contains nothing which supports their view. It holds that an oral notice of appeal does not suffice. It also was a per curiam decision, and the would-be appellant presented no argument to the court. In the fourth of the decisions (*State v. Mageske*) the court likewise did not have the benefit of any argument by the would-be appellant when it dismissed his appeal. It cited as authority *State v. Berger* but made no mention of the two earlier decisions. As we have seen, *State v. Berger* merely held that an oral notice of appeal does not suffice. The authority of *State v. Mageske* is greatly weakened, if not destroyed, by the fact that after the decision was announced the appeal was re-

instated upon stipulation of the parties, a result which could not have been accomplished if the court felt that the notice of appeal was void. The fifth (*State v. Berg*) and sixth (*State v. McAweeney*) were consolidated in this court as one. In holding the notices of appeal defective, this court cited in support of its conclusion two sections of our code of civil procedure. The majority concedes that our code of civil procedure is not applicable to our present problem, and in *State v. Horner,* supra, we expressly so held. It is evident that this error upon our part greatly weakens the authority of *State v. Berg* and *State v. McAweeney.* In those cases counsel for the appellants cited the civil code in support of their contentions. It is clear from the above that the matter now under consideration has never been presented to this court in a thorough manner. Decisions based upon inadequate presentation are never regarded with favor by the doctrine of stare decisis. 15 C. J., Courts, p. 942, section 333.

Let us consider what the doctrine of stare decisis actually implies. According to a writer in 37 Harvard Law Review, 409, Chamberlain's definition of the doctrine is the best (Chamberlain, Stare Decisis, 19). We now quote it: "A deliberate or solemn decision of a court or judge, made after argument on a question of law fairly arising in a case, and necessary to its determination, is an authority or binding precedent in the same court or in other courts of equal or lower rank, in subsequent cases, where 'the very point' is again in controversy; but the degree of authority belonging to such a precedent depends, of necessity, on its agreement with the spirit of the times or the judgment of subsequent tribunals upon its correctness as a statement of the existing or actual law, and the com-

pulsion or exigency of the doctrine, is in the last analysis, moral and intellectual rather than arbitrary or inflexible.''

When the courts determine issues of court procedure they relax the judicially established rule of stare decisis. A change in the rules of procedure affects no rights acquired in the past in reliance upon the decisions. We quote from Judge Cardozo's volume, ''The Nature of the Judicial Process'' (p. 156) : ''The law of evidence and generally the whole subject of procedure supply fields where much improvement may properly be made with a freedom even greater. The considerations of policy that dictate adherence to existing rules where substantive rights are involved apply with diminishing force when it is a question of the law of remedies''. Many instances showing the relaxation of the rule where procedural matters were involved are cited in 15 C. J., Courts, p. 944, § 339.

It will be observed from Chamberlain's definition that a decision, in order to operate as a foundation for the doctrine, should show that it was preceded by adequate argument, that it should indicate that it received deliberate attention by the court, and that it harmonizes with the spirit of the present times. The review of the above five cases shows that three of them were per curiam decisions; that in four of them no argument was presented by the prospective appellant; that one of them was subsequently reinstated by stipulation of the parties, which is a strong indication that the court reversed its previous decision; and that in the next, being the last of our decisions, we erroneously depended upon sections of the code of civil procedure. These cases surely do not indicate adequate presentation to the court, nor do they represent such deliberate, solemn pronouncements as are necessary for a founda-

tion for the doctrine. If these decisions hold that a copy of the notice of appeal must be handed to the county clerk and proof of service must be made in some manner other than that which is afforded by the presence of the original in the clerk's files, then we are satisfied that this construction of the statute is not in harmony with the spirit of the times. In 1864 ceremonies were in favor and much idle rigmarole was tolerated with which we today have no patience. Courts conform their construction of statutes, and even of constitutional provisions, to the spirit of the times. An instance is the change in judicial attitude of courts towards constitutional provisions like that of article I, section 15, Oregon Constitution, which makes the jury the judge of the law. See *Commonwealth v. Castellana*, 277 Pa. 117 (121 Atl. 50). Further evidencing the fact that the above decisions do not conform to the spirit of the times is the fact mentioned in the opinion of the majority that many statutes, similar to ours, have been repealed. The following paragraph taken from a carefully prepared article in 33 Columbia Law Review 199, is significant: ''Not only do we have the capital fact that the United States Supreme Court has formally and unqualifiedly rejected stare decisis, and has frequently exemplified its rejection, but many state courts have overruled their precedents, although in general professing to accept the rule. There is that notable statement of the court: 'Shall we stumble where they stumbled?' '' ·

Moreover, it seems to us that the majority is committing a grave error when it holds that the court is foreclosed from further consideration of the meaning of section 13-1209. The majority is now making a precedent in the application of the doctrine of stare decisis which will embarrass us in the future per-

formance of our judicial duties. It is unbecoming to a court to acknowledge that, although no vested rights will be disturbed, it is impossible for the court to depart from previous decisions, examine into the reason of things and proceed to do justice. When such a point has been reached and our bygone pronouncements foreclose further consideration of the question, then our precedents have become for us a Frankenstein, overpowering our reason and defeating the purpose for which this court was brought into being.

Of course our previous decisions should have weight with us and should not be disregarded for any light reason. But when the interpretation of a statute regulating procedure is under consideration, we should feel at liberty to examine into the reason of the matter once more. Let us, therefore, determine what interpretation should be placed upon this statute. The word "service" has been variously defined by the courts, and, hence, its meaning must be determined from the context. Since the word "service" does not possess a single, precise, definite meaning, it seems desirable to consider the purpose of the statute in determining what meaning the legislature intended should be assigned to that word in construing this section of our laws. Surely the purpose of the statute is not to single out the county clerk as an adverse party. Since such is not its purpose, we may safely conclude that the reasons which generally exist for delivering to adverse parties copies of the documents and obtaining acknowledgments of service do not here exist. In *Baberick v. Magner,* 9 Minn. 232, the court found that the purpose of the Minnesota statute, the provisions of which are similar to ours, is: "Such notice is directed to be served upon the clerk of the district court also, not for the mere information of that officer, and

to enable him to perform his duty in the premises, but for the more important purpose of supplying the files with some evidence as to the character of the notice given". Possibly another purpose of the statute is to make public the fact that the appeal has been taken by requiring the notice to be filed in the county clerk's office where all may have ready access to it. Two courts, at least, have held that the mere filing of a notice of appeal in the county clerk's office does not constitute compliance with statutes requiring the notice of appeal to be served upon that official: *Pierre Savings Bank v. Ellis,* 9 S. D. 251 (68 N. W. 545); *Valley City Land etc. Co. v. Schone,* 2 S. D. 344 (50 N. W. 356); *Peck v. Phillips,* 4 Dak. 430 (34 N. W. 65); *Territory of Montana v. Hanna,* 5 Mont. 246 (5 P. 250); *State v. Gibbs,* 10 Mont. 210 (25 P. 288). It is worthy of note, however, that after the above decisions had been announced, holding that a filing with the clerk did not constitute service upon him, the statutes were repealed. In South Dakota both the statutes requiring service of notice upon the clerk in civil and criminal cases were repealed. After several decisions of the Kansas court had intimated the likelihood of a similar construction of the Kansas statute, the legislature repealed the act. Other courts have held that filing notice of appeal with the court clerk constitutes compliance with statutes requiring service of notice of appeal upon him. From *In re Will of Madden: Mackin v. Madden,* 104 Wis. 61 (80 N. W. 100), we quote:

"A motion was made by the respondent for a dismissal of the appeal because there was no proof on file of service on the clerk of the circuit court of the notice of appeal. A proper notice of appeal was found in the record certified to this court, with the usual filing thereon of the clerk of the lower court. It was

urged that the statute requires a service of the appeal notice on the clerk of the circuit court where the judgment appealed from was entered, by delivering to such clerk, and leaving with him, a true copy thereof, and proof thereof, together with the original notice, to be duly certified to this court. * * * Here a notice of appeal duly directed to the clerk of the trial court was delivered to him for the purpose of complying with the appeal statute, and was filed and returned by him to this court as a part of the record. Sec. 3049, Stats. 1898, provides that an appeal must be taken by serving a notice in writing on the adverse party and on the clerk of the circuit court in which the judgment or order appealed from is entered; and sec. 3050 provides that the clerk shall in all cases transmit to the supreme court the notice of appeal. * * * It would require an exceedingly strict construction of the statute to reach the conclusion that there must be a notice of appeal served by copy on the attorney for the adverse party and on the clerk of the trial court, and that such notice, with proof of such service, must be filed with such clerk and by him certified to this court in order to confer jurisdiction upon it. The delivery to the proper clerk of a notice of appeal for the purpose of complying with the appeal statute, constitutes a literal compliance therewith, and the clerk's filing thereon sufficiently proves the service. The return of the notice served and filed complies, literally, with the statute requiring the notice of appeal to be so returned. The motion to dismiss the appeal is denied."

See to the same effect *Zahorka v. Geith,* 129 Wis. 498 (109 N. W. 552). From *State v. Klitzke,* 46 Minn. 343 (49 N. W. 54), we quote:

"The ground of the motion to dismiss this appeal is that a notice of appeal does not appear to have been served upon the clerk of the district court. It does appear, however, that a notice of appeal addressed to the attorneys for the state and bearing their admission of service was filed with the clerk of the court.

Following the decision in Baberick v. Magner, 9 Minn. 217 (232), we hold that to be a sufficient compliance with the statute.''

From *Ensley v. State,* 4 Okla. Cr. Rep. 49 (109 P. 250), we quote:

''The word 'service' itself as used with reference to summonses, writs, subpoenaes, and notices and other legal processes, means the reading of the same to the person to be served, or the deliverey to such person of the original or a copy thereof.   *   *   *   In the next place, no provision is made in our statute for the issuance or service of citation or summons in error in a criminal case. In our opinion notice of appeal is analogous to such summons in error, and is designed to take the place thereof. It was so held in Pacific Coast Ry. Co. v. Superior Court, 79 Cal. 103 (21 Pac. 609). And when such purpose of the notice is considered, we think that the conclusion must inevitably follow that the notice must be in writing, must be served, and that proof of service must be properly made. See Hunter v. Ter. (Ariz.) 36 Pac. 175.''

In *Orosco v. Gonzales,* 19 N. M. 130 (141 P. 617), the court was concerned with a statute which required any one dissatisfied with an award by the state engineer to take an appeal, but required him to serve the notice of appeal upon the engineer. In holding that a mere delivery of the notice of appeal to the engineer was sufficient, the court pointed out:

''The state engineer is supposed to be impartial in all questions which come before him for determination, having no interest whatever in the matter, and hence is not an adverse party upon whom formal service of process would be required, as in civil cases under our statute. The purpose of the notice to the engineer is to advise him that an appeal has been taken so that he can transmit or produce before said board the papers, maps, etc.''

In *Jarvis v. Chase County,* 64 Neb. 74 (89 N. W. 624), the court had under consideration a statute similar to ours. It held:

"Rigid interpretation and judicial refinement were carried too far when the court held that the county clerk could receive, file and keep the notice without being served with it. Delivery was service and the fact of delivery is a necessary inference from the recitals of the transcript."

It will be observed that, since the appellant filed his notice of appeal with the county clerk, he fully complied with the requirements of the statute as construed by the Minnesota, Nebraska, New Mexico and Wisconsin courts. Likewise, since his notice of appeal was in writing, the original was delivered to the county clerk, and, since we have incontestable proof of the service, he has complied in full with the statute as construed by the Oklahoma court. The word "service", as employed in our practice, does not invariably mean the reading of the original instrument to the individual to be affected, delivery to him of a copy and the making of a return of service. For instance, section 31-302, Oregon Code 1930, provides: "Service of a paper upon the sheriff may be made by delivering it to a person belonging to and in the office during office hours". The statute makes no suggestion that when service is made upon the sheriff a copy should be delivered and that an acknowledgment of service should be obtained. In the present instance, a demand that a copy be delivered to the county clerk and an acknowledgment of service obtained upon the original would invoke a useless ceremony because, as we have seen, the instrument itself was left with him. Likewise, to insist that the prospective appellant, if he obtains no acknowledgment of service upon the orig-

inal, must in some other form make proof of service would require a vain act because the original instrument is filed in the county clerk's office where its very presence proves everything that proof of service could establish. Since the county clerk possesses the original instrument he needs no copy, and since he includes a certified copy of the notice of appeal in the transcript he himself proves that the notice of appeal was served upon him. It is reasonable to demand that the appellant obtain an acknowledgment of service from the district attorney or supply proof in some other manner because the original is not filed with him and proof of service is an item which the appellant must establish in order to sustain his appeal. Having in mind the purpose of the statute and its phraseology it would seem as though full effect would be yielded to it by a holding that the prospective appellant's delivery of the notice of appeal to the county clerk constitutes service upon that official.

But even if we are mistaken in the views just announced, we, nevertheless, believe that in the present instance there has been substantial compliance with the statute. The law favors the right of appeal, and a substantial compliance with requirements governing the right is all that is necessary: *Smith v. Duff,* 39 Mont. 374 (102 P. 981, 133 Am. St. Rep. 582); *Nashville Syrup Co. v. Coca Cola Co.,* 215 Fed. 527, Ann. Cas. 1915B, 358; *Douthwright v. Champlin,* 91 Conn. 524 (100 Atl. 97, Ann. Cas. 1917E, p. 512). Section 13-1221, Oregon Code, provides: ''If the appeal be irregular in a substantial particular, but not otherwise, the appellate court may, on motion of the respondent and notice to the defendant, order it to be dismissed''. Applying this principle to the situation before us, we find that the county clerk has admitted service of the notice of

appeal upon himself by including the notice of appeal in the transcript. This admission is the substantial equivalent of proof of service. Moreover, all courts hold that a voluntary appearance cures defective service. In the present instance, whether properly or improperly served, the county clerk, nevertheless, has sent to this court the notice of appeal. Thus, everything that service was intended to accomplish has been accomplished. *Wilson v. Wilson,* 6 Idaho 597 (57 P. 708). This is an additional reason for holding that the appeal should not be dismissed.

The opinion of the majority refers to the possibility of repeal by legislative action. But to sacrifice the liberty of a citizen to the doctrine of stare decisis is rendering to that doctrine obeisance and withholding it from justice. We are the ones who placed upon the statute its present interpretation, and we are the ones who should remove it. For the above reasons I dissent.

BELT and CAMPBELL, JJ., concur.